IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CRIMINAL NO. 13-CR-30091-MJR |
| | ) | |
| MARTEZ MOORE and | ) | |
| DEWAYNE HILL, | ) | |
| | ) | |
| Defendants. | ) | |

GOVERNMENT'S MOTION FOR SEVERANCE

The United States of America, by Stephen R. Wigginton, United States Attorney for the Southern District of Illinois, and Kit R. Morrissey, Assistant United States Attorney for said district, hereby seeks a severance of the trials of Defendants Moore and Hill and in support thereof, states as follows:

1. The trial of the Defendants is scheduled for October 6, 2014. To date, neither of the above-named Defendants has entered a guilty plea. Previously imposed deadlines for pleading guilty pursuant to a plea agreement with the United States have passed. Moore and Hill are charged in Count 1 with Conspiracy to Distribute and Possess with Intent to Distribute Cocaine in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A), 846, and Title 18, United States Code, Section 2. Moore and Hill are also charged in Count 2 with Possession of a Firearm in Furtherance of a Drug Trafficking Crime in violation of Title 18, United States Code, 924(c). The remaining charges against Moore and Hill are not relevant to the motion for severance.

2. For purposes of this Court's ruling on the motion, following is a synopsis of the evidence the United States anticipates will be introduced at trial. In April of 2013, ATF began investigating Martez Moore. An ATF undercover agent was introduced to Moore by a confidential informant (CI). The undercover agent and the CI told Moore they were working in the area on construction projects and wanted crack cocaine to sell while in the area. Thereafter, on April 5th and 11th, 2013, the undercover agent made hand-to-hand purchases of crack cocaine from Moore at Moore's Belleville residence. Moore was supplied the crack cocaine by co-defendant Antwone Johnson. Moore sold approximately an ounce of crack cocaine on April 5th, and approximately two ounces of crack cocaine on April 11th.

Beginning with these sales and continuing through May 7, 2013, the undercover agent completed a series of recorded and monitored meetings with Moore and Moore's associates. The undercover agent told Moore that he worked for a Los Angeles based cocaine trafficking organization and that the organization was considering using the St. Louis area as a hub. He further explained that the organization would bring a load of cocaine into the area and that Moore and his associates would receive a percentage of the load at a reduced rate in return for protecting the load and getting it to its destination. The percentage of the load received by Moore and his associates would be "fronted," with payment due in a week or two after delivery.

On April 19, 2013, the undercover agent introduced Moore to the supposed Spanish-speaking leader of the organization and his interpreter, also undercover agents. At this meeting, Moore committed to accepting five kilograms of cocaine on credit and paying for the cocaine within approximately one week. He advised that he had associates available to provide armed security and to distribute the cocaine, as well as a law enforcement officer that would provide police information to them.

The following day, April 20, 2013, Moore told the undercover agent that he had secured additional associates who would assist in the distribution of cocaine, that five kilograms would no longer be enough, and that he and his associates wanted 10 kilograms. The undercover agent agreed to broker 10 kilograms for Moore. Thereafter, Moore introduced his associates to the undercover agent. At one meeting on April 24, 2013, Moore introduced Brian Matthews and Bryant Sawyer. Matthews and Sawyer told the undercover agent that they were "Metros" gang members and would act as armed security for all cocaine shipments handled by Moore. Moore confirmed that he was a high ranking member of the Metros and that Matthews and Sawyer were "foot soldiers" for him. The undercover agent explained to Matthews and Sawyer that they would be paid $2,000 by the drug trafficking organization to protect cocaine shipments, and he gave each of them a down payment of $500, with the balance to be paid after they provided security for Moore's first shipment of cocaine.

Later on April 24, 2013, Moore introduced East St. Louis Police Detective Orlando Ward to the undercover agent. Ward solicited $5,000 for providing police intelligence to Moore and the undercover agent. He accepted $2,500 with the balance to be paid after the first shipment of cocaine arrived in the area.

On April 30, 2013, the undercover agent took Moore, Hill, Antwone Johnson, and a fourth individual to an airport for the stated purpose of having them observe the Los Angeles drug distribution organization bring in a load of cocaine by plane. The undercover agent explained that his supplier wanted to meet them to discuss business and have them observe the operation so they could be prepared to accept delivery of cocaine Moore had ordered. After observing the operation, the undercover agent introduced Moore's associates, including Hill, to two supposed members of the organization, an agent posing as the Spanish-speaking leader of the organization, and another

agent posing as his interpreter. During the meeting with the supposed cocaine traffickers, Moore assured the undercover agent that he could handle the protection and distribution of 10 kilograms of cocaine anticipated for arrival on Tuesday, May 7, 2013. When the undercover agent was driving Moore, Hill, Antwone Johnson, and the fourth individual back to East St. Louis, they assured him that they were committed to carrying out the conspiracy. Hill made some of the following comments on the return trip:

> HILL: Shit, I thought we was going to roll today, shit. Tuesday can wait.
>
> ***
>
> HILL: That's top of the line. That's what you want. This is what I been asking for. Yeah.
> HILL: On my end, I'm ready. I'm good. I'm going to handle mine.
>
> ***
>
> UA: Well, it's due next Tuesday. We all need to be ready to go, sitting there in that hangar waiting on it.
> HILL: I been ready since yesterday.
> UA: Cool.
> HILL: I'm ready for shit. I'm ready.
>
> ***
>
> HILL: I truly, I truly think that the people that's in this car is probably, like, the best team put together in this city, because look at everybody in these mother-fucker's know. Politics and any service.
> MOORE: Yeah, I know man.
>
> ***
>
> UA: I feel real good about this.
> HILL: I hope you do, because it's going to happen, man. And I'll forever be in your debt; whatever you need from me, man, I don't give a fuck what it is, you tell [MOORE], you tell me personally, you know what I'm saying, and it's done. It's done. I swear to you, man. Don't nobody deserve this more than us. Me and [MOORE] done went through everything together. Everything.

Hill went on to explain that his expertise was transporting drugs on the highways without attracting law enforcement attention.

On May 7, 2013, the undercover agent went to Moore's Belleville residence and met with Moore, Hill, Antwone Johnson, Brian Matthews, Bryant Sawyer and Jaren Jamison in preparation

4

for meeting the shipment of cocaine. The six conspirators, in three vehicles, traveled to an airport within the Southern District of Illinois to meet the shipment. The undercover agent drove with Moore as his passenger. Dewayne Hill drove Moore's Tahoe with Brian Matthews and Bryant Sawyer as passengers. Antwone Johnson drove a third vehicle with Jaren Jamison as a passenger. Upon arrival at the airport, the undercover agent explained that he would receive a call when the plane containing the cocaine was about to land. He soon gave an arrest signal, and the conspirators were arrested and firearms were recovered.

3. Moore gave a statement following his arrest. Moore acknowledged that he asked the undercover agent to broker the delivery of 10 kilograms of cocaine from a drug trafficking organization and that he recruited others to participate in the conspiracy. During Moore's post-arrest statement, the following exchange occurred with respect, in part, to Hill:

> AGENT: And of the, and of the ten keys that you guys were getting, how many of them was Antwone [Johnson] and Dewayne [Hill] going to get?
>
> MOORE: I don't know, I guess –
>
> AGENT: Or were you just going to figure that out later?
>
> MOORE: I don't know, as many as they needed. I didn't care who got what.

4. In his post arrest statement of nearly two hours, Hill acknowledged a trip to the airport with Moore and the undercover agent on April 30, 2103, to observe the "operation." When he observed the operation on April 30th, he thought it was "intimidating" and "raw," but said "Who wouldn't grab that opportunity to help your family?" He acknowledged that on May 7, 2013, Moore was supposed to get 10 kilos of cocaine and the undercover agent was supposed to get two, and that Moore was to get 20% of the load (10 kilograms of a 50-load shipment). Hill

5

said that he had a small role to play, that he was to be observant and report anything suspicious, watch out for anyone trying to rob Moore, and watch Moore's back. He repeatedly said that he was not promised anything in particular for his supporting role, but he knew that Moore would take care of him because Moore and he were like family and looked out for each other.  He also said that he was not expecting anything from anyone except Moore and that he didn't know the others well.  He said that because of the bond he has with Moore, he doesn't question what Moore asks him to do.  When told that Moore told the undercover agent that Hill was going to distribute some of the cocaine, he acknowledged that Moore might have said that, but said that although Moore was like family, Moore lies, what comes out of Moore's mouth is not the truth, and that one cannot take Moore's word.  He acknowledged that Matthews, Sawyer and Jamison were supposed to provide protection to Moore and be armed and that Moore directed him to drive Moore's Tahoe and transport Matthews and Sawyer to the airport.

     5.    *Bruton v. United States*, 391 U.S. 123 (1968), held that the admission of a codefendant's post-conspiracy statement/confession implicating the defendant constituted reversible error where the codefendant did not testify.  The basis for the rule of *Bruton* is the Sixth Amendment right to confrontation and cross-examination.  *See also Lilly v. Virginia*, 527 U.S. 116 (1999).  *Bruton* also applies to interlocking statements/confessions, that is, a non-testifying co-defendant's statement/confession which facially incriminates the defendant who has also confessed.  *Cruz v. New York*, 481 U.S. 186 (1987).  *Richardson v. Marsh,* 481 U.S. 200 (1987), held that if a codefendant's confession does not incriminate the defendant on its face, but does so only when linked to additional evidence, it may be admitted if a limiting instruction is given to the jury and the defendant's name is redacted from the confession.  The standard of review for a redacted statement admitted at trial appears to be "harmless beyond a reasonable doubt." *United*

*States v. Sandstrom*, 594 F.3d 634, 648 (8th Cir.), cert. denied, 131 S. Ct. 202 (2010).

6. The United States submits that the post-arrest statements of Moore and Hill are a vital part of the government's proof at trial, and the government intends to introduce each post-arrest statement against the defendant who gave it. To do so in a joint trial of Moore and Hill implicates *Bruton* and *Cruz,* and the problem cannot be corrected as in *Richardson v. Marsh*.

Wherefore, the United States respectfully requests that the trials of Defendants Moore and Hill be severed if neither enters a plea of guilty before trial. Upon severance, the United States would elect to try Moore first.

> Respectfully submitted,
> STEPHEN R. WIGGINTON
> United States Attorney
>
> *s/ Kit R. Morrissey*
> KIT R. MORRISSEY
> Assistant United States Attorney
> Nine Executive Drive
> Fairview Heights, IL 62208
> Tel: (618) 628-3700
> Fax: (618) 628-3730
> E-mail: Kit.Morrissey@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CRIMINAL NO. 13-CR-30091-MJR |
| ) | |
| MARTEZ MOORE and ) | |
| DEWAYNE HILL, ) | |
| ) | |
| Defendants. ) | |

### CERTIFICATE OF SERVICE

I hereby certify that on September 15, 2014, I caused to be electronically filed

GOVERNMENT'S MOTION FOR SEVERANCE

with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Attorneys of Record

          Respectfully submitted,

          STEPHEN R. WIGGINTON
          United States Attorney

          *s/ Kit R. Morrissey*
          KIT R. MORRISSEY
          Assistant United States Attorney
          Nine Executive Drive
          Fairview Heights, IL 62208
          Phone: 618-628-3700
          Fax: 618-628-3730
          Email:   Kit.Morrissey@usdoj.gov